# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-1656V**

| | |
|---|---|
| BARBIE McMICHAEL,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: October 5, 2026 |

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Adam Muffett, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On August 3, 2021, Barbie McMichael filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") following a Hepatitis B ("Hep B") vaccine she received on September 21, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

As explained below, I find that the onset of Petitioner's pain more likely than not occurred within 48 hours of her vaccination, and that she has otherwise satisfied the requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation.

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

The parties engaged in settlement discussions from May 2023 until reaching an impasse in April 2025. *See* ECF No. 31-56. Respondent then filed his Rule 4(c) Report on June 30, 2025, in which he argues that Petitioner is not entitled to compensation because the "medical records do not demonstrate that Petitioner's pain occurred within forty-eight hours of vaccine administration." Rule 4(c) Report. Petitioner filed a Motion for Ruling on the Record ("Mot.") on October 23, 2025 and Respondent filed a response ("Resp.") on December 19, 2025. ECF No. 62, 64.

The matter is now ripe for adjudication.

## II. Relevant Facts

### *A. Medical Records*

Petitioner had no history of left shoulder pain prior to her vaccination. She received a Hep B vaccine in her left deltoid on September 21, 2018. Ex. 1 at 6; Ex. 2 at 334.

On September 28, 2018 (one week after vaccination), Petitioner's submitted an online communication to her primary care provider ("PCP") requesting medication refills. Ex. 2 at 336. Four days later, she received a phone call from her PCP about her prescriptions and an appointment for blood work. *Id.* On October 3, 2018, Petitioner had a subsequent appointment with her PCP for medication management, at which time she reported fatigue and her concern about a thyroid issue. Ex. 2 at 349, 352. There is no mention in the records of shoulder pain.

Petitioner returned to her PCP on October 16, 2018, with complaints of a cough, headaches, congestion and sore throat. Ex. 2 at 390. She was diagnosed with a viral upper respiratory infection and allergic rhinitis. *Id*. at 392. Petitioner contacted her PCP again on October 22, 2018, with ongoing respiratory symptoms. *Id*. at 427. Petitioner did not report shoulder pain during these encounters.

On November 26, 2018 (now 66 days after vaccination), Petitioner returned to her PCP for left shoulder pain. Ex. 2 at 438-39. She reported that she "received a Hepatitis B vaccination injection on 09/21/18 and states her shoulder has been hurting since that time." *Id*. On exam, her shoulder was "very tender to palpation" and she was "unable to raise left arm above shoulder level." *Id*. at 442. She had x-rays that showed degenerative changes and was referred for an MRI. *Id*. at 442-43. She was prescribed Zanaflex for muscle spasms and advised to continue taking Mobic. *Id*. at 442.

A December 3, 2018 MRI revealed "moderately severe supraspinatus tendinosis with a rim rent tear" and "moderately severe acromioclavicular osteoarthropathy." Ex. 3 at 676. On December 6, 2018, Petitioner's PCP referred her to an orthopedist. Ex. 2 at 455.

Petitioner saw the orthopedist on December 20, 2018. Ex. 3 at 748. She reported "problems with her shoulder now daily for about 2 months." The record notes that she "denie[d] any specific trauma although there was something correlated with an injection she got for an immunization." *Id*. The doctor assessed Petitioner as "really tender" and "freezing up" with "some weakness." *Id*. He recommended arthroscopic surgery, which Petitioner underwent on January 18, 2019. *Id*. at 748, 752.

Petitioner continued to treat with post-operative physical therapy through May 20, 2019. Ex. 4 at 4-47.

B. *Affidavit Testimony*

Petitioner has filed one affidavit with her Petition. Ex. 8 (ECF No. 1-11). She recalled that the administrator administered the vaccine to "the top of [her] arm, right where [her] left shoulder joint [was] located." Ex. 8 at ¶3. Petitioner stated that the injection "hurt so bad" that she "almost jumped off the table." *Id*.

Petitioner explained that she worked at a paint store and complained to her boss about her shoulder pain. Ex. 8 at ¶4. She recalled him telling her that "it will get better," so she "tried ice, heat, massage therapy," chiropractic treatment, and over-the-counter pain medications to relieve the pain. *Id*. Petitioner also states that she mentioned her shoulder pain to her doctor and was told "that it would get better with time." *Id.* She stated that once her pain progressed to the point where she could no longer lift a gallon of paint, she sought treatment. *Id*. at ¶5. She noted that she "did not understand the severity of [her injury] as [she] was not putting [herself] first" because she was "focused on [her] job and trying to support [her] family." *Id*.

## III. Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v.*

*Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Findings of Fact

Respondent argues that Petitioner has not provided preponderant evidence that her shoulder pain began within 48 hours of her vaccination, because she did not report shoulder pain for approximately two months while seeking treatment for other medical problems. Resp. at 2. He further argues that Petitioner's affidavit is "not consistent with the medical records, conclusory in nature, and provides insufficient evidence that Petitioner's alleged SIRVA injury occurred within forty-eight hours of vaccination." *Id*.

But as the medical evidence establishes, Petitioner consistently linked the onset of her shoulder pain with her prior vaccination. *See,* e.g., Ex. 2 at 438-39 (reporting that she "received a Hepatitis B vaccination injection on 09/21/18 and states her shoulder has been hurting since that time."); Ex. 3 at 748 (reporting correlation between the start of her shoulder pain and her vaccination). Although Petitioner did not specifically place the onset of her pain within 48 hours of her vaccination, it is common for medical records to contain general statements as to onset, which are then expanded upon via sworn testimony. *See e.g. Ogea v. Sec'y of Health & Human Servs.*, No. 22-0025V, 2025 WL 1752390 at *5 (Fed. Cl. Spec. Mstr. May 20, 2025) ("[T]he simple fact that she did not state a specific time of onset does not defeat her Table claim."). Petitioner's affidavit provides detail supporting immediate onset. She recalled specifically that her vaccination was given high on her shoulder "where her left shoulder joint is located," and that she "almost jumped off the table" during the injection. Ex. 8 at ¶3.

Further, although Petitioner waited to seek treatment for two months after her vaccination, and communicated with her doctors during that time, none of the encounters cited by Respondent defeat her Table SIRVA claim. One week after her vaccination, Petitioner submitted an online request for a medication refill. Ex. 2 at 336. She received a phone call from her PCP a few days later, during which an appointment was made for blood work. *Id*. During that appointment, which was less than two weeks after her vaccination, Petitioner discussed her medication and fatigue (which was potentially related to the medication). *Id*. at 349, 352. Petitioner also stated that she "did not understand the severity of her injury" at first and mentioned her pain to both her boss and her doctor, both of whom advised her to give it time. Ex. 8 at ¶4-5. She attempted to treat her pain at home until the pain became intolerable. *Id*. at ¶5. The final two encounters cited by Respondent occurred about two weeks later (still less than one month after vaccination) when Petitioner suffered an upper respiratory infection and sought treatment for her acute illness. *See* Ex. 2 at 390, 427.

Considering the full context during this time, I find that Petitioner would not reasonably be expected to report post-vaccination shoulder pain at these encounters, which had specific purposes. And, two months is not a significant delay (without more) for a claimant with a SIRVA injury to seek treatment. Although Respondent does not find Petitioner's affidavit persuasive, it provided specific details of her vaccination as well as the reasons for her short delay in seeking treatment that are not inconsistent with the medical records.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

## V. Ruling on Entitlement

### A. *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that her pain began within 48 hours of her vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i),(iii-iv). Accordingly, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### B. *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The record shows that Petitioner received a Hep B vaccine on September 21, 2018. Ex. 1 at 6; Section 11(c)(1)(A) (requiring receipt of a covered vaccine). Petitioner has also clearly stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 8 at ¶9; Section 11(c)(1)(E) (lack of prior civil award). Finally, Petitioner's medical records reveal that she suffered the residual effects of her vaccine injury for more than six months, and Respondent does not argue otherwise. *See e.g.*, Ex. 4 at 4 (PT progress note on May 20, 2019); Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

**<u>s/Brian H. Corcoran</u>**
Brian H. Corcoran
Chief Special Master